UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

FRANCIS T. DEUTSCH,

Petitioner,

v.                                          Case No. 14-cv-231-JPG

UNITED STATES OF AMERICA,                   Crim Case No. 10-cr-40048-JPG

Respondent.

## MEMORANDUM AND ORDER

This matter comes before the Court on petitioner Francis T. Deutsch's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1).   The Government has responded to the motion (Doc. 20), and Deutsch has replied to that response (Doc. 22).

I.      **Background**

On June 9, 2011, the petitioner pled guilty pursuant to a plea agreement to Count 1 of the Indictment, a count of wire fraud in violation of 18 U.S.C. § 1343.   In conjunction with his guilty plea, Deutsch stipulated that he "did knowingly and with the intent to defraud devise a scheme to obtain money by means of false pretenses, representations, and promises."   Stip. of Facts ¶ 1.   As part of the plea agreement, Deutsch agreed that the intended loss amount applicable in his case was more than $400,000 but less than $1 million and that his adjusted guideline offense level was 21. Plea Agrmt. § II.4.   He also waived his right to seek relief under § 2255 from any aspect of his conviction or sentence with limited exceptions that do not apply here.   Plea Agrmt. § III.2.   In addition, the Government agreed to dismiss Count 2, a second wire fraud count, at the time of sentencing.   The Court accepted Deutsch's plea after a thorough colloquy as required by Rule 11 of the Federal Rules of Criminal Procedure, finding Deutsch was knowingly, voluntarily and competently pleading guilty.

At sentencing in January 2012, the Court based Deutsch's sentence on a finding that the loss was $434,517.05, which fell into the category of more than $400,000 but less than $1 million, establishing an adjusted offense level of 21.   *See* U.S.S.G. §§ 2B1.1(a)(1) & 2B1.1(b)(1)(H).[1] This was consistent with Deutsch's plea agreement.   That level was reduced by three points for acceptance of responsibility, yielding a total offense level of 18.   *See* U.S.S.G. § 3E1.1(a) & (b). Considering Deutsch's criminal history category of III, this resulted in a guideline sentencing range of 33 to 41 months in prison.   Further, after consulting with his attorney, Deutsch withdrew his objection to the loss amount found by the Court and stipulated to the restitution amount.   The Court sentenced the petitioner to serve 41 months in prison and 3 years of supervised release and to pay a special assessment of $100 and restitution in the amount of $777,254.   The Court also entered an order of forfeiture for $600,000 in cash.   As promised, the Government moved to dismiss Count 2.   The petitioner did not appeal his conviction or sentence.

In December 2012, Deutsch filed a § 2255 motion arguing, among other things, that his counsel was ineffective for failing to object when the Government failed to make a motion for a reduction of sentence under U.S.S.G. § 5K1.1 at his sentencing as it had represented it would do during Deutsch's plea colloquy.   The Government essentially conceded this point, and the Court vacated Deutsch's judgment for a resentencing at which the omitted motion could be made.   *See Deutsch v. United States*, 12-cv-1293-JPG.

At a resentencing hearing on July 31, 2013, the parties acknowledged that their respective positions that the original restitution figure may have included some tax and interest amounts that should not have been included but also may have omitted other amounts that should have been included.   As a solution, the Government agreed to the Court's vacating the forfeiture order and to

---

[1]     The 2010 version of the United States Sentencing Guidelines Manual was used to calculate Deutsch's sentencing range.

refrain from seeking further forfeiture to satisfy Deutsch's monetary obligations, and Deutsch agreed not to challenge the restitution amount.   Based on the offense level and criminal history findings used at the original sentencing but considering a § 5K1.1 motion, the Court imposed a sentence of 20 months in prison and the same term of supervised release, fine and restitution as in his original sentencing.   Again, Deutsch did not appeal.

## II.     § 2255 Motion

In his pending § 2255 motion, Deutsch challenges his sentence on the grounds that (1) his counsel was constitutionally ineffective with respect to loss amount arguments and (2) the Government committed prosecutorial misconduct at the resentencing by arguing positions it knew were baseless because it had learned new information between the original sentencing and the resentencing.   Specifically, he argues that the loss figure used to determine his offense level was incorrect because one of the victims of his crime, Chevron Corporation, actually profited from Deutsch's criminal activity and because he had repaid losses to Chevron before discovery of his crime.   Government misconduct and ineffective assistance of counsel occurred, he alleges, because they both knew of Chevron's repayment before Deutsch's resentencing but failed to raise the issue before the Court or present evidence to prove the real loss amount.   Deutsch contends the Government knew of this error and threatened to withdraw the plea agreement and pursue other charges against Deutsch if he brought the error to the Court's attention.   He also faults the Government and his counsel for failing to raise at sentencing the issue that Chevron was aware of and had instructed Deutsch to act as he did, which would have mitigated the loss amount.   He also suggests the Government's failure to fully apprise him about its relationship with Chevron prior to the resentencing violated its disclosure duties under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972).

3

In response, the Government argues that (1) Deutsch waived the right to file a § 2255 in his plea agreement, (2) a sentencing guideline calculation error is not cognizable in a § 2255 motion, and (3) counsel was not constitutionally ineffective because the loss involved was actually far greater than the amount for which Deutsch was held accountable and counsel secured a positive overall deal for Deutsch in light of the evidence of the actual loss.

## III.   Analysis

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States."   28 U.S.C. § 2255.   However, "[r]elief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'"   *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States,* 723 F.3d 870, 878-79 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 2830 (2014)), *cert. denied*, 135 S. Ct. 1574 (2015).   It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief."   28 U.S.C. § 2255(b); *see Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009).   As the Court held earlier in this case, since a restitution order does not present the type of serious error cognizable in a § 2255 proceeding.   *United States v. Sloan*, 505 F.3d 685, 697 (7th Cir. 2007); *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997), the Court only considers Deutsch's challenge to the loss figure that drove his term of imprisonment.

### A.   Waiver of Right to File § 2255 Motion

As a preliminary matter, the Court considers whether Deutsch has waived his right to file a § 2255 motion.   Deutsch's plea agreement contained a broad waiver of his right to challenge his sentence through a direct appeal and a § 2255 motion:

> The Defendant is aware that Title 18, Title 28 and other provisions of the United States Code afford every defendant limited rights to contest a conviction and/or sentence.   Acknowledging all this, and in exchange for the recommendations and concessions made by the United States in this plea agreement, the Defendant knowingly and voluntarily waives his right to contest any aspect of his conviction and sentence that could be contested under Title 18 or Title 28, or under any other provision of federal law, except that if the sentence imposed is in excess of the Sentencing Guidelines as determined by the Court (or any applicable statutory minimum, whichever is greater), the Defendant reserves the right to appeal the reasonableness of the sentence.   The Defendant acknowledges that in the event such an appeal is taken, the Government reserves the right to fully and completely defend the sentence imposed, including any and all factual and legal findings supporting the sentence, even if the sentence imposed is more severe than that recommended by the Government.   Defendant knowingly and voluntarily waives his right to seek a pardon, whether before or after his release from custody.

Plea Agrmt. § III.2.   Such a waiver may be unenforceable if the plea agreement was involuntary or the defendant received ineffective assistance of counsel in connection with negotiating the plea agreement.   *Jones v. United States*, 167 F.3d 1142, 1144-45 (7th Cir. 1999); *see Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011).   However, if a defendant's ineffective assistance of counsel challenge relates only to counsel's performance at sentencing, the defendant's waiver is enforceable.   *Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000) (defendant's § 2255 challenge "relates only to his attorney's performance with respect to sentencing.   Because the challenge has nothing to do with the issue of a deficient negotiation of the waiver, Mason has waived his right to seek post-conviction relief."); *see also United States v. Smith*, 759 F.3d 702, 707 (7th Cir.), *cert. denied,* 135 S. Ct. 732 (2014) ("There is no doubt that a defendant may waive his right to challenge a sentence not yet imposed, including challenges based on the ineffectiveness of his counsel at sentencing.").

Deutsch has not alleged that his plea was involuntary or that he received ineffective assistance of counsel in connection with negotiating the plea agreement, and he has never asked the Court to set aside his guilty plea.   Instead, Deutsch's allegations of ineffective assistance of

counsel all stem from occurrences after he pled guilty and before or at the sentencing hearings, not during the plea stage.   The plea agreement is explicit that Deutsch was waiving challenges to "any aspect of his conviction and sentence," limited by exceptions not at issue here.   At the plea colloquy, he admitted he had read and reviewed the plea agreement with his attorney, that his attorney had explained the waivers in it, and that he was fully satisfied with his counsel's representation.   The Court notes that counsel's representation at this stage, with which Deutsch testified he was satisfied, included negotiation of the plea agreement in which Deutsch agreed that the appropriate loss range was more than $400,000 and less than $1 million dollars.   After a thorough colloquy, the Court found that Deutsch had knowingly, voluntarily and competently entered in to the plea agreement which contained the waiver of his § 2255 rights, and nothing Deutsch says in his motion disputes this.   In light of that knowing, voluntary and competent waiver of his right to file this § 2255 motion, even about his sentencing, the Court must reject the motion.

Even if Deutsch had not waived the right to file this § 2255 motion, the Court would reject it for the following reasons.

B.     Ability to Raise the Issue in a § 2255 Proceeding

The Government contends that Deutsch cannot challenge a sentencing guideline calculation in a § 2255 motion.   This is not completely true.   It is true that *United States v. Coleman*, 763 F.3d 706, 708-09 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1574 (2015), and *Hawkins v. United States*, 706 F.3d 820, 823 (7th Cir.), *supp'd by* 724 F.3d 915 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1280 (2014), hold in the career offender context that as long as a defendant's sentence is within the statutory range, an erroneous guideline range finding is not cognizable in a § 2255 proceeding.   This is because, in light of the Court's discretion to give an appropriate sentence

6

regardless of the advisory guideline range, an erroneous guideline range finding does not work a miscarriage of justice for § 2255 purposes.   However, Deutsch has not made a direct challenge to his guideline range finding of the kind that would be prohibited by *Coleman* or *Hawkins*.   Instead, he has invoked the Sixth Amendment right to counsel to bring the issue properly before the Court. *See United States v. Jones*, 635 F.3d 909, 916 (7th Cir. 2011) ("In the sentencing context, an attorney's unreasonable failure to identify and bring to a court's attention an error in the court's Guidelines calculations that results in a longer sentence may constitute ineffective assistance entitling the defendant to relief."); *see also Ramirez v. United States*, 799 F.3d 845, 855 (7th Cir. 2015) ("An attorney's failure to object to an error in the court's guidelines calculation that results in a longer sentence for the defendant can demonstrate constitutionally ineffective performance."). In the Sixth Amendment context, the Court can properly consider whether Deutsch's counsel was deficient in his argument with respect to the guideline range found to be applicable in January 2012 and again adopted in July 2013.   The Court now turns to that inquiry.

      C.    <u>Performance of Counsel</u>

      Deutsch claims that his sentence was the result of ineffective assistance of counsel in violation of the Sixth Amendment.   The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."   U.S. Const. amend. VI.   This right to assistance of counsel encompasses the right to *effective* assistance of counsel.   *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970); *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009).   A party claiming ineffective assistance of counsel bears the burden of showing (1) that his counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense.   *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir.

2011); *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009); *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000).

To satisfy the first prong of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of his counsel.   *Wyatt*, 574 F.3d at 458.   The Court must then consider whether, in light of all of the circumstances, counsel's performance was outside the wide range of professionally competent assistance.   *Id.*   The Court's review of counsel's performance must be "highly deferential[,] . . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."   *Strickland*, 466 U.S. at 689; *accord Wyatt*, 574 F.3d at 458.   Counsel's performance must be evaluated keeping in mind that an attorney's trial strategies are a matter of professional judgment and often turn on facts not contained in the trial record.   *Strickland*, 466 U.S. at 689.   The Court cannot become a "Monday morning quarterback."   *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

To satisfy the second prong of the *Strickland* test, the plaintiff must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable. *Jones*, 635 F.3d at 915; *Fountain*, 211 F.3d at 434; *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006).   "A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome."   *Adams*, 453 F.3d at 435 (citing *Strickland*, 466 U.S. at 694).

Both Deutsch and the Government present the Court with numerous documents and calculations purporting to establish why the Court was right or wrong in its loss calculation. Deutsch asks the Court to find Chevron had no loss, had been fully repaid before the fraud was discovered, and actually profited from Deutsch's fraudulent activity.   On the other side, the Government submits it can prove that if Deutsch fully repaid the intended loss to Chevron before

8

the fraud was detected, a substantial part was repaid with funds obtained in another component of the fraudulent scheme from another victim.   The Government also submits it can prove the loss from all of Deutsch's fraudulent activity alleged in both wire fraud counts exceeded $1 million, and that Deutsch's plea agreement setting forth a loss of between $400,000 and $1 million gave Deutsch a substantial benefit he would not otherwise have gotten without the plea agreement. The Court notes that its function here is not to determine with particularity the exact loss amount but to evaluate the competence of counsel's performance, avoiding judgments made in 20/20 hindsight.

In this case, the question of ineffective assistance of counsel must begin with Deutsch's plea agreement in which he agreed that he was actually guilty of and would plead guilty to wire fraud as alleged in Count 1, Plea Agrmt. § II.1, that his conduct established the essential elements of the crime charged in Count 1, Plea Agrmt. § II.2, and that the loss amount under the sentencing guidelines was between $400,000 and $1 million:

> Defendant and the Government agree that the initial Guideline Offense Level in this case is 7 pursuant to U.S.S.G. § 2B1.1(b)(1)(H) [*sic*].   The Defendant and the Government further agree that the specific offense characteristic regarding intended loss amount applies (2B 1.1 (b)(1)(H)[)], thus the Defendant's initial Guideline Offense level should be increased 14 levels (loss 400,000 - 1,000,000), creating a base offense level of 21.

Plea Agrmt. § II.4.   In return, the Government agreed to dismiss Count 2, not to prosecute Deutsch for other crimes known to the Government at the time, Plea Agrmt. § I.7, to recommend a sentence at the low end of the sentencing range found by the Court, Plea Agrmt. § II.3, and to consider filing a motion for a sentence reduction under U.S.S.G. § 5K1.1, Plea Agrmt. § II.11.   In conjunction with his plea agreement, Deutsch entered into a written stipulation of facts agreeing that he "did knowingly and with the intent to defraud devise a scheme to obtain money by means of false pretenses, representations, and promises."   Stip. of Facts ¶ 1.

9

The Court conducted a thorough plea colloquy with Deutsch in which, among other things, Deutsch stated under oath he had read and reviewed the plea agreement and stipulation of facts with his attorney, that he had signed the plea agreement and stipulation of facts, that he was happy with the counsel, representation and advice given to him by his attorney, that the factual basis for the fraud charged in Count 1 as stated by the Government and clarified by Deutsch's attorney was correct, and that he had talked to his attorney about the federal sentencing guidelines and how they might apply in his case.   The Court concluded from Deutsch's answers at the colloquy that he was knowingly, voluntarily and competently pleading guilty to Count 1, and the Court accepted the plea.

Deutsch now claims his counsel was constitutionally ineffective for failing to argue or present evidence at sentencing showing that Chevron had been repaid through letters of credit and settlement with its credit card processor for all its losses from the conduct charged in Count 1 before Deutsch's fraud was discovered.   Application note 3(E) to U.S.S.G. § 2B1.1 provides that amounts repaid before the detection of the fraud should be credited against the loss amount. Deutsch claims the Government knew of this repayment before Deutsch's resentencing but told Deutsch and his counsel that if he objected to the loss amount, the Government would construe that as a violation of the plea agreement and would prosecute Deutsch for additional crimes. Deutsch also faults his counsel for failing to argue "in mitigation" that Deutsch did not, in fact, intend any fraud because Chevron was aware of his conduct.

It was within the realm of reasonably competent performance for counsel to refrain from contesting the loss amount at sentencing or from arguing that Deutsch did not actually intend any fraud.   In light of Deutsch's statements in the plea agreement and the stipulation of facts and his sworn testimony at the plea colloquy, there was a serious risk that denying his fraudulent intent or

10

challenging the loss amount at sentencing would have resulted in a higher sentence for Deutsch.

Deutsch had entered into a plea agreement admitting his guilt to Count 1 and essentially absolving him of any responsibility for any other crimes known to the Government at the time, including the crime charged in Count 2.   Nevertheless, there appeared to be substantial evidence of Deutsch's guilt of Count 2; his co-defendant in that count, Robert Gulledge, had pled guilty and was cooperating with the Government, and the charged scheme was essentially a continuation of the one Deutsch admitted in Count 1.   Additionally, the Government had evidence that the total loss for both Counts 1 and 2 exceeded $1 million.   Deutsch had been able to negotiate a plea agreement avoiding the chance that he would be held responsible for that loss amount, and instead taking responsibility for a lower loss amount, benefiting from an acceptance of responsibility offense level reduction, and securing additional promises to minimize his sentence.   In addition, at the resentencing, he was also able to negotiate a concession from the Government to forego the forfeiture imposed at the original sentencing.

In light of the plea agreement, any attempt to argue that Deutsch did not intend any fraud or that the loss in Count 1 was less than $400,000 would have opened the door to a strong argument that Deutsch was not abiding by the plea agreement and would likely have relieved the Government of its promises in the plea agreement.   The Government could have then prosecuted Deutsch for Counts 1 and 2, sought to hold him accountable for more than a $1 million loss, and sought forfeiture.   Indeed, the Government made Deutsch's counsel aware of this possibility before his resentencing, and, as a consequence, counsel made clear at the resentencing that Deutsch was not arguing "the figures" at that hearing.   Resent. Tr. 12.   All things considered, it was reasonable for counsel to proceed in a manner consistent with the plea agreement which, even if not accurate as to the loss amount for the count of conviction, benefited Deutsch overall by

allowing him to avoid potential responsibility for a higher loss.

Since Deutsch has not alleged anything amounting to deficient performance by counsel, he cannot establish ineffective assistance in violation of his Sixth Amendment rights.   Consequently, § 2255 relief on this basis is not warranted.

D.   Prosecutorial Misconduct

Deutsch argues the Government committed prosecutorial misconduct in violation of his Fifth Amendment due process rights when it allowed him to be resentenced on Count 1 based on a loss amount it knew was incorrect and in light of his self-proclaimed lack of intent to defraud Chevron.

In looking at claims of prosecutorial misconduct, the Court must determine whether statements or conduct of the Government were improper and whether they deprived him of a fair proceeding.   *Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir. 1994).   The Court has carefully reviewed the transcript of Deutsch's resentencing hearing and finds that the Government did not make any improper statements or omissions and did not display any improper conduct.   The Government made no misrepresentations and simply allowed Deutsch to be sentenced based on the terms of his plea agreement, which Deutsch had agreed to at his guilty plea and which he had at no time had asked to withdraw.   That is completely appropriate.   This is not a case where the Government becomes aware late in the game that a charge or loss is totally unfounded, yet allows the case to proceed without a factual basis.   Here, Deutsch was charged with serious crimes where there was evidence of over a $1 million loss, and he was able to negotiate a deal where he was held responsible for one of two charged offenses and a loss of $400,000.   That the Government may have found out before resentencing that its assumptions about the exact source of that loss as reflected in the plea agreement were incorrect does not obligate it to explain its misunderstanding

12

to the Court and does not vitiate the plea agreement, which Deutsch entered into knowingly and voluntarily.   The Government's conduct simply did not deprive Deutsch of a fair proceeding but instead allowed him to continue to receive the benefit of a negotiated plea agreement.

Finally, Deutsch makes passing reference to the Government's failure to disclose an arrangement it had with Chevron where Chevron would open its internal investigation files to the Government in exchange for the Government's providing immunity from prosecution and agreeing not to interview Chevron's employees.   He claims this arrangement was exculpatory and was withheld from him in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), which require the Government to disclose evidence that is favorable to the defendants or that impeaches a Government witness.   There is no doubt that a defendant is entitled to disclosure of all evidence that "would tend to exculpate" him, *Brady*, 373 U.S. at 88, and all evidence that casts doubt on the credibility of prosecution witnesses and is material to the outcome of the trial.   *See Giglio*, 405 U.S. at 155.

The Court is puzzled by this final argument.   Deutsch has not pointed to any evidence that the Government offered Chevron immunity from any prosecution.   Without such evidence, Deutsch's claim cannot succeed.   And to the extent that Chevron agreed to let the Government look at its investigation files rather than interview its employees, Deutsch has not explained how that fact is exculpatory to him, impeaching to a Government witness, or material to the outcome of the proceedings in which he admitted guilt and the loss amount ultimately found by the Court. Thus, there was nothing to disclose under *Brady* or *Giglio*.

Because Deutsch has alleged nothing amounting to prosecutorial misconduct justifying relief from judgment, the Court will not grant § 2255 relief on this basis.

13

IV.    **Certificate of Appealability**

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings and Rule 22(b)(1) of the Federal Rules of Appellate Procedure, the Court considers whether to issue a certificate of appealability of this final order adverse to the petitioner.   A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2); *see Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Ouska v. Cahill-Masching*, 246 F.3d 1036, 1045 (7th Cir. 2001).   To make such a showing, the petitioner must "demonstrate that reasonable jurists could debate whether [the] challenge in [the] habeas petition should have been resolved in a different manner or that the issue presented was adequate to deserve encouragement to proceed further."   *Ouska*, 246 F.3d at 1046; *accord Tennard*, 542 U.S. at 282; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (certificate of appealability should issue if the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.").   The Court finds that Deutsch has not made such a showing and, accordingly, declines to issue a certificate of appealability.

V.    **Conclusion**

For the foregoing reasons, the Court **DENIES** Deutsch's § 2255 motion (Doc. 1) and **DIRECTS** the Clerk of Court to enter judgment accordingly.   The Court further **DECLINES** to issue a certificate of appealability.

**IT IS SO ORDERED.**
**DATED: February 25, 2016**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**